**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| **BEAR CREEK TECHNOLOGIES, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 1:11-cv-880-TSE-JFA** |
| | ) | |
| **VERIZON SERVICES CORP.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ANSWER TO COMPLAINT, AFFIRMATIVE DEFENSES, AND
COUNTERCLAIMS OF VERIZON SERVICES CORP.**

Defendant Verizon Services Corp. ("Verizon") hereby answers and asserts affirmative

defenses and counterclaims to the Complaint filed by Plaintiff Bear Creek Technologies, Inc.

("BCT"), on August 17, 2011, as follows:

**NATURE OF THE ACTION**

1.      **This is a patent infringement action arising under the Patent Laws of the
        United States, 35 U.S.C. § 271 *et seq.,* and involving voice-over-internet-
        protocol-enabling technologies.**

**ANSWER:**  Verizon admits that Paragraph 1 of the Complaint alleges that this is a patent

infringement action arising under the Patent Laws of the United States, 35 U.S.C. § 271 *et seq.*,

but Verizon specifically denies any alleged infringement.  Verizon is without knowledge or

information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 1

of the Complaint and, therefore, denies each of the allegations.

2.      **As the internet rose in prominence in the early to mid 1990s, technologies
        developed to allow people to use computers to place long distance telephone
        calls over the internet, rather than the public switched telephone network
        ("PSTN"), thereby avoiding long distance charges.  Understanding the
        economic impact this development would have upon the telecommunications
        industry, tensions developed between providers of standard telephone
        switching technologies and proponents of what was soon to be called Voice
        Over Internet Protocol ("VoIP") technology.**

**ANSWER:**  Verizon is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 2 of the Complaint and, therefore, denies each of the allegations.

> **3.** **Rather than viewing VoIP technology as an exclusive alternative to standard telephony equipment and infrastructure, Joseph B. Thompson, founder of Bear Creek Technologies, Inc., envisioned a paradigm in which VoIP would complement and cooperate with existing standard telephony equipment and with the switching and trunking infrastructure already in place.**

**ANSWER:**  Verizon is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 3 of the Complaint and, therefore, denies each of the allegations.

> **4.** **Joe Thompson applied for a patent in early 1996 to memorialize these novel ideas during a time when telephony companies were each spending millions of dollars per year deploying and managing new telephone trunking and PSTN infrastructure.**

**ANSWER:**  Verizon is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 4 of the Complaint and, therefore, denies each of the allegations.

> **5.** **On February 15, 2011, the United States Patent and Trademark Office ("USPTO") duly and legally issued United States Patent Number 7,889,722 (the "'722 Patent"), entitled "System for Interconnecting Standard Telephony Communications Equipment to Internet Protocol Networks" after a full and fair examination.  A true and correct copy of the '722 Patent is attached hereto as Exhibit A.**

**ANSWER:**  Verizon admits that, on its face, U.S. Patent No. 7,889,722 ("the '722 patent") was issued by the United States Patent and Trademark Office ("USPTO") on February 15, 2011, and is entitled "System for Interconnecting Standard Telephony Communications Equipment to Internet Protocol Networks."  Verizon admits that a copy of the '722 patent was purportedly attached as Exhibit A to the Complaint.  Verizon is without knowledge or information sufficient

2

to form a belief as to the truth of the remaining allegations of Paragraph 5 of the Complaint and,

therefore, denies each of the remaining allegations.

6.     **Bear Creek Technologies, Inc. is the assignee and owner of the '722 Patent, and owns all right, title and interest in, to and under, the '722 Patent, including the right to sue for infringement of any and all claims thereof.  A true and correct copy of the Assignment to Bear Creek Technologies, Inc., and a true and correct copy of an electronic receipt from the USPTO showing that the Assignment has been submitted to the USPTO for recordation, are attached hereto as Exhibit B.**

**ANSWER:**  Verizon admits that a copy of a document entitled "Assignment of US Patent

Application" was purportedly attached as Exhibit B to the Complaint.  Verizon is without

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

of Paragraph 6 of the Complaint and, therefore, denies each of the remaining allegations.

7.     **Defendant is infringing and contributing to and inducing infringement of one or more claims of the '722 Patent.**

**ANSWER:**  Verizon denies the allegations of Paragraph 7 of the Complaint.

### PARTIES

8.     **Bear Creek Technologies, Inc. ("BCT") is a corporation organized and existing under the laws of Delaware with its principal place of business in Orange Beach, Alabama.**

**ANSWER:**  Verizon is without knowledge or information sufficient to form a belief as to the

truth of the allegations of Paragraph 8 of the Complaint and, therefore, denies each of the

allegations.

9.     **Verizon Services Corp. ("Defendant") is a corporation organized and existing under the laws of Delaware with its principal place of business at 1320 N., Courthouse Road, Arlington, Virginia 22201.  Defendant and/or one or more of its affiliates provides VoIP Services ("the VoIP Services") as described below to subscribers, which VoIP Services, on information and belief, may or may not be marketed or provided under a specific name or trade name.  The VoIP Services include but are not limited to the FiOS Digital Voice service.**

**ANSWER:**  Verizon admits that Verizon is a Delaware corporation with a place of business at 22001 Loudon County Parkway, Ashburn, Virginia 20147.  Verizon admits that it is involved in the provision of a service called FiOS Digital Voice.  Verizon is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 9 of the Complaint and, therefore, denies each of the allegations.

**JURISDICTION AND VENUE**

10.     **This Court has exclusive original jurisdiction of the subject matter of this action under 28 U.S.C. § 1338(a).**

**ANSWER:**  The allegations of Paragraph 10 of the Complaint present legal conclusions to which no response is required.

11.     **This Court has personal jurisdiction over Defendant.  Defendant has conducted and does conduct regular and ongoing business in Virginia. Defendant, directly or through intermediaries (including distributors, agents, retailers, subsidiaries, affiliates, and others) ships, distributes offers for sale, sells, advertises, operates and/or uses its VoIP products and services in the United States and in Virginia.  On information and belief, Defendant has committed acts of patent infringement in Virginia, including, making, using, offering for sale, and/or selling infringing VoIP products or services in Virginia.  These products or services have been used and continued to be used and/or purchased by consumers in Virginia and consumers in Virginia benefit from these products and services.**

**ANSWER:**  The allegations in Paragraph 11 of the Complaint present legal conclusions to which no response is required.  Verizon admits that it is qualified to conduct business in the Commonwealth of Virginia.  To the extent that Paragraph 11 contains any remaining allegations to which Verizon must respond, Verizon denies such allegations.  Verizon specifically denies any alleged infringement, including by its affiliates.

12.     **Venue is proper under 28 U.S. C. §§ 1391 and 1400(b) because Defendant regularly conducts business in Virginia and has made, used, offered to sell, and sold, and/or continues to make, use, offer to sell, and/or sell products and/or services within Virginia, including without limitation, VoIP products and services which, upon information and belief, infringe BCT's Patent in this District.  Upon information and belief, portions of the infringing**

4

> infrastructure and actions, as well as a number of relevant party and third
> party witnesses with information relevant to the development, deployment,
> and use of such infrastructure and actions, reside in or near this Judicial
> District.

**ANSWER:**  The allegations in Paragraph 12 of the Complaint present legal conclusions to which

no response is required.  To the extent that Paragraph 12 contains any allegations to which

Verizon must respond, Verizon denies such allegations.  Verizon specifically denies any alleged

infringement.

### COUNT I
### Direct Infringement of U.S. Patent No. 7,889, 722

13.    BCT realleges the allegations of the above paragraphs 1 through 12, as if
expressly set forth herein.

**ANSWER:**  Verizon incorporates herein by reference its responses to Paragraphs 1 through 12

of the Complaint as if fully set forth herein.

14.    BCT is the owner by assignment of all right, title, and interest in and to the
'722 Patent, entitled "System for Interconnecting Standard Telephony
Communications Equipment to Internet Protocol Networks," which duly and
legally issued in the name of Joseph B. Thompson on February 15, 2011.

**ANSWER:**  Verizon admits that, on its face, the '722 patent issued on February 15, 2011, is

entitled "System for Interconnecting Standard Telephony Communications Equipment to

Internet Protocol Networks," and names Joseph B. Thompson as the purported inventor.  Verizon

is without knowledge or information sufficient to form a belief as to the truth of the remaining

allegations of Paragraph 14 of the Complaint and, therefore, denies each of the remaining

allegations.

15.    The '722 Patent is valid and enforceable.

**ANSWER:**  Verizon denies the allegations of Paragraph 15 of the Complaint.

16.    Defendant directly or through an affiliate provides subscribers with the VoIP
Service above, giving each subscriber access to a communications network

> **for placing voice phone calls via an internet protocol connection at the subscriber's premises.**

**ANSWER:**  Verizon admits that it is involved in the provision of a service called FiOS Digital Voice.  Verizon is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 16 of the Complaint and, therefore, denies each of the remaining allegations.

> **17.    The VoIP Services provide subscribers with such access using a telephone connected to the internet protocol connection.**

**ANSWER:**  Verizon is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 17 of the Complaint and, therefore, denies each of the allegations.

> **18.    The VoIP Services connect some subscriber calls, placed via the internet protocol connection, via a public switched telephone network, to call recipients, and connects other subscriber calls, placed via the internet protocol connection, without traversing the public switched telephone network.**

**ANSWER:**  Verizon is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 18 of the Complaint and, therefore, denies each of the allegations.

> **19.    Upon information and belief, Defendant, through at least the provision of the VoIP Services, is infringing directly (either by literal infringement or by infringement under the Doctrine of Equivalents) at least claim 1 of the '722 Patent by making, using, selling, offering for sale, operating, advertising and/or marketing VoIP products, systems or services within the United States.  More particularly, and without being limited thereto, Defendant deploys, operates, advertises, markets and/or sells VoIP products, systems, or services (including the VoIP Services) that, on information and belief, directly infringe at least claim 1 of the '722 Patent.**

**ANSWER:**  Verizon denies the allegations of Paragraph 19 of the Complaint.

> **20.    As a direct and proximate result of Defendant's infringement of the '722 Patent, BCT has suffered and will continue to suffer irreparable injury and damages in an amount not yet determined for which BCT is entitled to relief.**

6

**ANSWER:**  Verizon denies the allegations of Paragraph 20 of the Complaint.

> **21.    On February 22, 2011, BCT filed a complaint for patent infringement against Defendant in this Court (the "RCN Action").  This Complaint included as an exhibit a true and correct copy of the '722 Patent.**

**ANSWER:**  Verizon admits that BCT filed a complaint ("RCN Complaint") for patent

infringement in the Eastern District of Virginia, on February 22, 2011, captioned *Bear Creek*

*Technologies, Inc. v. RCN Corporation*, No. 2:11-cv-103 ("RCN Action"), which purported to

attach a copy of the '722 patent as Exhibit A.  Verizon is without knowledge or information

sufficient to form a belief as to the truth of the remaining allegations of Paragraph 21 of the

Complaint and, therefore, denies each of the remaining allegations.

> **22.    By the end of March, 2011, on information and belief, Defendant was given a copy of the '722 Patent and the Complaint of the RCN Action, which included BCT's allegations of infringement.**

**ANSWER:**  Verizon admits that Verizon Communications Inc. was served with a copy of a

complaint in the RCN Action on March 15, 2011, and that a purported copy of the '722 patent

was attached as Exhibit A.  Verizon specifically denies any infringement.  Verizon is without

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

of Paragraph 22 of the Complaint and, therefore, denies each of the remaining allegations.

> **23.    On August 17, 2011, Defendant was dismissed without prejudice under Rule 21 of the Federal Rules of Civil Procedure.**

**ANSWER:**  Verizon admits the allegations of Paragraph 23 of the Complaint.

> **24.    There was an objectively high likelihood that Defendant was infringing the '722 Patent.**

**ANSWER:**  Verizon denies the allegations of Paragraph 24 of the Complaint.

> **25.    Upon information and belief, Defendant knew of the high likelihood that it was infringing the '722 Patent.**

**ANSWER:**  Verizon denies the allegations of Paragraph 25 of the Complaint.

26. **Furthermore, the risk of infringement was so obvious that, even if Defendant did not know of the risk of infringement, Defendant should have known of the risk that it was infringing the '722 Patent.**

**ANSWER:** Verizon denies the allegations of Paragraph 26 of the Complaint.

27. **Upon information and belief, Defendant has not taken any action to end its infringement of the '722 Patent.**

**ANSWER:** Verizon specifically denies any alleged infringement.  Verizon is without

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

of Paragraph 27 of the Complaint and, therefore, denies each of the remaining allegations.

28. **Upon information and belief, Defendant's infringement of the '722 Patent is continuing and will continue unless enjoined by this Court.**

**ANSWER:** Verizon denies the allegations of Paragraph 28 of the Complaint.

29. **Upon information and belief, Defendant's continued infringement of the '722 Patent is willful and deliberate.**

**ANSWER:** Verizon denies the allegations of Paragraph 29 of the Complaint.

## COUNT II
## Induced Patent Infringement of U.S. Patent No. 7,889,722

30. **BCT realleges the allegations of the above paragraphs 1 through 29 as if expressly set forth herein.**

**ANSWER:** Verizon incorporates herein by reference its responses to Paragraphs 1 through 29

of the Complaint as if fully set forth herein.

31. **Upon information and belief, at least one of Defendant's affiliates, third-party service providers, or customers is directly infringing the '722 Patent.**

**ANSWER:** Verizon specifically denies any alleged infringement, including by its affiliates.

Verizon is without knowledge or information sufficient to form a belief as to the truth of the

remaining allegations of Paragraph 31 of the Complaint and, therefore, denies each of the

remaining allegations.

**32.**   **Upon information and belief, Defendant has communicated, directly or indirectly through an affiliate, with one or more certain affiliates, one or more third parties, and plural subscribers ("the Other Entities"), each regarding the VoIP Services subject to BCT's claims in this action.  The certain affiliates include affiliates of Defendant; the third-parties include but are not limited to a third party with which Defendant has contracted to install or test the VoIP Services for subscribers.  The subscribers are subscribers of the VoIP Services.**

**ANSWER:**  Verizon denies the allegations of Paragraph 32 of the Complaint.

**33.**   **Upon information and belief, Defendant, directly or in concert with one or more of certain affiliates or third parties, arranged operations necessary for, devised and/or implemented a marketing plan to sell, planned for, carried out, and/or devised or adopted a business and revenue generating model each involving the deployment and/or provision of the VoIP Services.**

**ANSWER:**  Verizon admits that it is involved in the provision of a service called FiOS Digital Voice.  Verizon is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 33 of the Complaint and, therefore, denies each of the allegations.

**34.**   **Upon information and belief, Defendant has taken actions that have caused, urged, encouraged, and/or aided one or more of the Other Entities to infringe directly on the '722 Patent.**

**ANSWER:**  Verizon denies the allegations of Paragraph 34 of the Complaint.

**35.**   **Upon information and belief, at least as early as March 31, 2011 and since that time, Defendant had actual knowledge of the '722 Patent and, with such knowledge, has continued the above-mentioned actions to cause, urge, encourage, and/or aid the Other Entities to infringe directly on the '722 Patent.**

**ANSWER:**  Verizon admits that Verizon Communications Inc. was served with a copy of a complaint in the RCN Action on March 15, 2011, and that a purported copy of the '722 patent was attached as Exhibit A of the RCN Complaint.  Verizon specifically denies any infringement, including by its affiliates.  Verizon is without knowledge or information sufficient to form a

belief as to the truth of the remaining allegations of Paragraph 35 of the Complaint and,

therefore, denies each of the remaining allegations.

**36.      Upon information and belief, Defendant has had knowledge, and/or has willfully remained blind to such knowledge, and/or has acted with deliberate indifference that its actions induced the conduct by the Other Entities that directly infringes on the '722 Patent.**

**ANSWER:**  Verizon denies the allegations of Paragraph 36 of the Complaint.

**37.      Upon information and belief, Defendant acted with the specific intent to induce one or more of the Other Entities to infringe the '722 Patent.**

**ANSWER:**  Verizon denies the allegations of Paragraph 37 of the Complaint.

**38.      Upon information and belief, Defendant is inducing infringement of the '722 by the Other Entities in violation of 35 U.S.C. § 271(b).**

**ANSWER:**  Verizon denies the allegations of Paragraph 38 of the Complaint.

**39.      Upon information and belief, Defendant's continued infringement of the '722 Patent is willful and deliberate.**

**ANSWER:**  Verizon denies the allegations of Paragraph 39 of the Complaint.

**40.      Upon information and belief, the direct infringement by the one or more Other Entities involves infringement of at least claim 1 of the '722 Patent either literally or under the doctrine of equivalents.**

**ANSWER:**  Verizon specifically denies any alleged infringement, including by its affiliates.

Verizon is without knowledge or information sufficient to form a belief as to the truth of the

remaining allegations of Paragraph 40 of the Complaint and, therefore, denies each of the

remaining allegations.

### COUNT III
### Contributory Patent Infringement of U.S. Patent No. 7,889,722

**41.      BCT realleges the allegations of the above paragraphs 1 through 40 as if expressly set forth herein.**

**ANSWER:**  Verizon incorporates herein by reference its responses to Paragraphs 1 through 40

of the Complaint as if fully set forth herein.

**42.** Upon information and belief, Defendant offers to sell within the United States, sells within the United States, or imports into the United States a component of the infringing apparatus used in the VoIP Services ("the Component") to one or more of the Other Entities. The Component is one or a combination of an IP hardphone, an Analog Telephone Adaptor ("ATA"), a VoIP PBX, a VoIP gateway, a VoIP softswitch, a VoIP intermediary server, and a PSTN or Voice gateway.

**ANSWER:** Verizon denies the allegations of Paragraph 42 of the Complaint.

**43.** Upon information and belief, the Component is a component of the infringing apparatus being used during the VoIP Service, including during such use direct infringement by one or more of the Other Entities.

**ANSWER:** Verizon denies the allegations of Paragraph 43 of the Complaint.

**44.** Upon information and belief, the Component constitutes a material part of the infringing apparatus.

**ANSWER:** Verizon denies the allegations of Paragraph 44 of the Complaint.

**45.** Upon information and belief, the Defendant knows or should know or have reason to know that the Component is made or especially adapted for use in the infringing apparatus, because, among other reasons, the Defendant had specific notice and knowledge of the '722 Patent and the infringement alleged either by them or by one or more of the Other Entities or acted with deliberate indifference to the possibility of such infringement despite knowing about the '722 Patent and the alleged infringement.

**ANSWER:** Verizon denies the allegations of Paragraph 45 of the Complaint.

**46.** Upon information and belief, the Component is not a staple article or commodity of commerce suitable for substantial non-infringing use.

**ANSWER:** Verizon denies the allegations of Paragraph 46 of the Complaint.

**47.** Upon information and belief, Defendant has communicated, directly or indirectly through an affiliate, with one or more of the Other Entities regarding the VoIP Services.

**ANSWER:** Verizon is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 47 of the Complaint and, therefore, denies each of the allegations.

48.     Upon information and belief, Defendant, directly or in concert with one or more of the Other Entities, arranged operations necessary for, devised and/or implemented a marketing plan to sell, planned for, carried out, and/or devised or adopted a business and revenue generating model, each involving the deployment and/or provision of the VoIP Services.

**ANSWER:** Verizon admits that it is involved in the provision of a service called FiOS Digital Voice. Verizon is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 48 of the Complaint and, therefore, denies each of the allegations.

49.     Upon information and belief, Defendant has taken actions, including but not limited to providing the Component, that have caused, urged, encouraged, and/or aided one or more of the Other Entities to infringe directly on the '722 Patent.

**ANSWER:** Verizon denies the allegations of Paragraph 49 of the Complaint.

50.     Upon information and belief, Defendant had actual knowledge of the '722 Patent and, with such knowledge, has continued the above-mentioned actions to cause, urge, encourage, and/or aid the Other Entities to infringe directly on the '722 Patent.

**ANSWER:** Verizon denies the allegations of Paragraph 50 of the Complaint.

51.     Upon information and belief, Defendant is contributing to the infringement of the '722 Patent by one or more of the Other Entities in violation of 35 U.S.C. § 271(c).

**ANSWER:** Verizon denies the allegations of Paragraph 51 of the Complaint.

52.     Upon information and belief, Defendant's continued infringement of the '722 Patent is willful and deliberate.

**ANSWER:** Verizon denies the allegations of Paragraph 52 of the Complaint.

53.     Upon information and belief, the direct infringement by the one or more Other Entities involves infringement of at least claim 1 of the '722 Patent either literally or under the doctrine of equivalents.

**ANSWER:** Verizon specifically denies any alleged infringement, including by its affiliates. Verizon is without knowledge or information sufficient to form a belief as to the truth of the

remaining allegations of Paragraph 53 of the Complaint and, therefore, denies each of the remaining allegations.

## PRAYER FOR RELIEF

Verizon denies that BCT is entitled to any of the relief requested in the Complaint.

## AFFIRMATIVE DEFENSES

Without conceding that any of the following necessarily must be pleaded as an affirmative defense, or that any of the following is not already at issue by virtue of the foregoing denials, and without prejudice to Verizon's right to plead and assert additional defenses as discovery into the facts of the matter warrant, Verizon asserts the following affirmative defenses:

## FIRST AFFIRMATIVE DEFENSE
### (Non-Infringement)

1.      Verizon and its affiliates have not infringed and do not infringe, either directly, contributorily, or by inducement, any claim of the Asserted Patent, either literally or under the doctrine of equivalents.

2.      Verizon and its affiliates have not intentionally, willfully, or deliberately infringed, either literally or under the doctrine of equivalents, any asserted claim of the Asserted Patent.

## SECOND AFFIRMATIVE DEFENSE
### (Invalidity)

3.      The claims of the Asserted Patent are invalid, unenforceable, and/or void for failure to comply with one or more of the requirements of the Patent Laws of the United States, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, 112, 116, and/or 185.

**THIRD AFFIRMATIVE DEFENSE**
**(Laches, Prosecution Laches, Waiver, Acquiescence, Estoppel, and/or Statute of Limitations)**

4.     BCT's remedies under the Asserted Patent are barred by laches, prosecution laches, waiver, acquiescence, estoppel, and/or 35 U.S.C. § 286.

**FOURTH AFFIRMATIVE DEFENSE**
**(Failure to Give Notice)**

5.     BCT's claims for relief and alleged damages are limited by 35 U.S.C. § 287.

**FIFTH AFFIRMATIVE DEFENSE**
**(Claim Construction Estoppel)**

6.     BCT is estopped from construing the claims of the Asserted Patent to cover any product or service offered by or on behalf of Verizon or its affiliates because representations, omissions, and/or concessions made during prosecution of the Asserted Patent, and/or related U.S. or foreign patents and patent applications, limit the scope of the claims of the Asserted Patent.

**SIXTH AFFIRMATIVE DEFENSE**
**(Prosecution History Estoppel)**

7.     Prosecution history estoppel bars BCT from asserting infringement under the doctrine of equivalents of claims of the Asserted Patent and from adopting claim construction positions contrary to statements and amendments made during prosecution of the Asserted Patent and/or related U.S. or foreign patents and patent applications.

**SEVENTH AFFIRMATIVE DEFENSE**
**(Exhaustion / Implied License / Actual License)**

8.     BCT is barred from obtaining any relief sought in the Complaint to the extent that the Asserted Patent is subject to the doctrines of patent exhaustion or implied license.  In

addition, BCT is barred from obtaining any relief sought in the Complaint to the extent the

Asserted Patent is subject to one or more licenses previously granted to third party(s), including

licenses that inure, directly or indirectly, in whole or in part, to the benefit of Verizon or its

affiliates.

## EIGHTH AFFIRMATIVE DEFENSE
### (Use/Manufacture By/For Government)

9.      To the extent that any accused product or method has been used or manufactured

by or for the United States Government, claims and demands by BCT for relief based on the

Asserted Patent are barred by 28 U.S.C. § 1498.

## NINTH AFFIRMATIVE DEFENSE
### (Inequitable Conduct)

10.     Verizon alleges that the '722 patent is unenforceable because of the patentee's

inequitable conduct during prosecution of the '722 patent before the U.S. Patent and Trademark

Office ("USPTO").  During the pendency of the three applications from which the '722 patent

claims the benefit of priority, as well as during pendency and prosecution of the '722 patent, the

prosecution counsel and the named inventor failed to bring to the attention of the USPTO U.S.

Patent No. 4,771,425 ("the '425 patent"), a prior art document of which the prosecution counsel

and the named inventor were aware.  Upon information and belief, the prosecution counsel and

the named inventor knew that the '425 patent was material and specifically failed to disclose the

'425 patent in the prosecution of the '722 patent with the specific intent to deceive the USPTO.

But for the deliberate failure of the prosecution counsel and the named inventor to bring the '425

patent to the attention of the USPTO, the USPTO would not have issued the '722 patent.

11.     U.S. Patent Application No. 11/253,129, the application that matured into the '722 patent, was filed on October 18, 2005.  The '722 patent claims the benefit of priority as a continuation of U.S. Patent Application No. 10/770,808, filed January 10, 2006 ("the '808 application"), which matured into U.S. Patent No. 6,985,494.  The '808 application, in turn, claims the benefit of priority as a continuation of U.S. Patent Application No. 10/279,645, filed March 20, 2003 ("the '645 application"), now abandoned, and the '645 application, in turn, claims the benefit of priority as a continuation of U.S. Patent Application No. 08/812,745, filed March 6, 1997 ("the '745 application"), now abandoned.  The '745 application, in turn, claims the benefit of priority of two provisional applications, U.S. Provisional Patent Application No. 60/012,896, filed March 6, 1996, and U.S. Provisional Application No. 60/013,240, filed March 11, 1996.

12.     Concurrent with the filing of the '745 application on March 6, 1997, BCT filed Patent Cooperation Treaty (PCT) Patent Application No. PCT/US97/03745 ("the PCT application").  Like the '745 application, the PCT application claims the benefit of priority to the same two provisional applications from which the '745 application, the '645 application, the '808 application, and the '722 patent claim priority, namely, U.S. Provisional Patent Application No. 60/012,896, filed March 6, 1996, and U.S. Provisional Application No. 60/013,240, filed March 11, 1996.

13.     On July 28, 1997, the International Searching Authority mailed an International Search Report in the PCT application ("the 1997 ISR").  The 1997 ISR identified the '425 patent under the category of "Documents Considered to be Relevant," stating that the '425 patent was "Relevant to claim [numbers]" 1-8 of the PCT application.

14.     On September 12, 1997, the PCT application published as World Intellectual Property Organization (WIPO) Patent Application Publication No. WO 1997/33412 ("the WIPO publication").  The 1997 ISR, which identified the '425 patent as a relevant document, was appended to the WIPO publication.  *See* WO 1997/33412, p. 44.

15.     Upon information and belief, the identification of the '425 patent in the 1997 ISR provided actual notice to Joseph B. Thompson, the inventor, and to Anthony Miele, the U.S. patent prosecution counsel for the '722 patent, of the relevance of the '425 patent.

16.     The publication of the 1997 ISR with the WIPO publication also provided constructive notice to Mr. Thompson and Mr. Miele of the relevance of the '425 patent.

17.     Upon information and belief, Mr. Thompson and Mr. Miele knew the '425 patent was relevant.  The 1997 ISR specifically stated that the '425 patent was a "document of **particular relevance**; the claimed invention cannot be considered novel or cannot be considered to involve an inventive step when the document is taken alone" (emphasis added).

18.     Upon information and belief, Mr. Thompson and Mr. Miele knew the '425 patent was material.  Title 37, C.F.R., § 1.56, entitled "Duty to disclose information material to patentability," specifically admonishes "applicants to carefully examine . . . prior art cited in search reports of a foreign patent office in a counterpart application," such as the '425 patent cited in the International Search Report, and "the closest information over which individuals associated with the filing or prosecution of a patent application believe any pending claim patentably defines, to make sure that any material information contained therein is disclosed to the Office."

17

19.     Mr. Thompson, the sole named inventor and founder of BCT, signed two separate oaths affirming his Duty of Disclosure under 37 C.F.R. § 1.56.  In the first oath, dated July 17, 1997 ("the 1997 Declaration"), which was signed only 11 days before the mailing of the 1997 ISR, Mr. Thompson acknowledged under oath his "duty to disclose all information known to [him] to be material to patentability as defined in 37 C.F.R. 1.56."

20.     On February 7, 2006, Mr. Thompson reaffirmed his knowledge of his duty of disclosure by signing a second oath ("the 2006 Declaration").  In the 2006 Declaration, Mr. Thompson again "acknowledge[d] the duty to disclose information which is material to patentability as defined in 37 CFR § 1.56, including for continuation-in-part applications, material information which became available between the filing date of the prior application and the national or PCT international filing date of the continuation-in-part application."  The language in the 2006 Declaration explicitly advised Mr. Thompson of his duty to disclose information that became available after the March 6, 1996 filing date of the '745 application, from which the '722 patent claims the benefit of priority, which includes the '425 patent cited in the 1997 ISR.

21.     In both the 1997 and 2006 Declarations, Mr. Thompson was directed  to the definition of materiality found in 37 C.F.R. § 1.56, which admonishes "applicants to carefully examine . . . prior art cited in search reports of a foreign patent office in a counterpart application," which again includes the '425 patent cited in the 1997 ISR.

22.     Upon information and belief, Mr. Miele is registered to practice before the USPTO, having been assigned USPTO Registration No. 34,393, and Mr. Miele is aware of his own responsibilities related to the duty to disclose information material to patentability.

23.     Patent prosecution counsel for the '722 patent had an obligation to bring the 1997 ISR and the '425 patent to the attention of the USPTO.  Upon information and belief, Mr. Miele was the patent prosecution counsel "substantively involved in the preparation or prosecution of the application" that resulted in the '722 patent.

24.     In the 1996 Declaration, signed by Mr. Thompson, Mr. Miele was "appoint[ed] . . . to prosecute this application and to transact all business in the U.S. Patent and Trademark Office connected therewith and with the resulting patent."  The 2006 Declaration, again signed by Mr. Thompson, "appoint[ed] the practitioners associated with [Customer Number 0100050048] [to] prosecute this application and transact all business in the Patent and Trademark Office connected therewith," specifically directing the USPTO to "[a]ddress all telephone calls to Anthony L. Miele."

25.     As a registered patent practitioner, upon information and belief, Mr. Miele is familiar with the Manual for Patent Examining and Procedure ("MPEP"), including § 2001.06(a), which is entitled "Prior Art Cited in Related Foreign Applications."

26.     In § 2001.06(a) of the MPEP, "Applicants and other individuals, as set forth in 37 CFR 1.56," are reminded of the "duty to bring to the attention of the Office any material prior art or other information cited or brought to their attention in any related foreign application." Section 2001.06(a) specifically states that "[t]he inference that such prior art or other information is material is especially strong where it is the only prior art cited or where it has been used in rejecting the same or similar claims in the foreign application."  MPEP § 2001.06(a) (citing *Gemveto Jewelry Co.* v. *Lambert Bros., Inc.*, 216 U.S.P.Q. 976 (S.D.N.Y. 1982).

27.     Without having considered the '425 patent, the USPTO issued the '722 patent on February 15, 2011.  The '722 patent includes two independent claims and twenty-two claims total.  Independent claim 1, for example, recites a method requiring the steps of:

> an Internet phone server capable of being in communication with an originating phone device, the originating phone device being capable of both dialing a given destination number of a given destination device and thereby initiating a given call between the originating phone device and the given destination device, an auditory dial tone being caused at the originating phone device when the originating phone device is in an offhook state and operatively connected to the Internet phone server, the given call including transmission of transmitted media between the originating phone device and the given destination device;
>
> a first media converter configured to convert the transmitted media for the given call received from the originating phone device, to transmitted IP addressed media;
>
> a destination number determination mechanism configured to determine a given destination number of the given call placed by the originating phone device;
>
> an IP versus another phone network discriminator configured to determine, after the transmitted media is converted by the first media converter to the transmitted IP addressed media, whether a given destination phone device addressed by the given destination number resides on an IP addressed network, for which the transmitted IP addressed media is converted by the first media converter, or resides on another phone network;
>
> a second media converter configured to convert the transmitted IP addressed media of the given call to another network signal suitable for another phone network when the discriminator determines that the given destination number resides on the other phone network; and
>
> a communication mechanism configured to connect the given call over an Internet  connection without converting the transmitted IP addressed media of the given call to the other network signal, when the discriminator determines that the given destination device addressed by the given destination number resides on the IP addressed network.

28.     During the course of prosecution of the '722 patent, the applicant identified
specific features that purported to distinguish the pending independent claims over the cited prior
art.  For example, in a reply that resulted in an indication of allowable subject matter from the
USPTO, Mr. Miele, on behalf of the applicant, argued that "[e]ach of independent claims 12
[now claim 1 of the '722 patent] and 29 [now claim 20 of the '722 patent] recites that the
transmitted media is converted to transmitted IP addressed media."  January 27, 2010 Response
at 9.  "Later, a discriminator (to make delivery happen) determines (after the noted conversion)
whether the destination phone device resides on an IP addressed network or resides on another
phone network, and the media is either further converted or connected without further conversion
depending on this determination."  *Id.*

29.     Upon information and belief, but for the failures of Mr. Thompson, BCT, and Mr.
Miele, individually and collectively, to bring the '425 patent to the attention of the patent
Examiner, the USPTO would not have allowed the '722 patent to issue.

30.     The '425 patent, entitled "Synchronous Packet Voice/Data Communication
System," was filed October 29, 1984, as U.S. Patent Application No. 665,819, and issued on
September 13, 1988, more than seven years before the earliest effective filing date of the '722
patent.  Therefore, the '425 patent is prior art to the '722 patent under 35 U.S.C. § 102(b).

31.     Upon information and belief, the '425 patent, alone and in combination with other
prior art documents, discloses the limitations of at least claim 1 of the '722 patent.

32.     The '425 patent discloses multiple telephony network types, *e.g.*, analog and
digital, in a system having both originating and terminating phone devices.  Referring to
Figure 1, shown below, the '425 patent discloses "[a]n analog PBX, such as the analog PBX 44,

21

[that] may switch, receive and transmit conventional analog telephone signals among conventional analog telephone sets 56 and 58 to channel bank 46," and "[a] digital PBX, such as PBX 46, [that] may switch, transmit and receive voice signals through digital telephones 60 and 62, along with digital data signals of a data terminal 64." col. 4:34-41.



Fig. 1 of U.S. Patent No. 4,771,425

33. The '425 patent further discloses that a computer may be connected to, and operable in, the mixed analog and digital system illustrated in Figure 1. For example, Figure 1 shows that "computer 66 may be connected to a digital PBX, such as PBX 54, in the same manner as a terminal 64." col. 4:43-44. Moreover, to allow for "essentially transparent packet communication embedded in a DS-1 environment," the '425 patent discloses that "each frame of the DS-1 standard [is transformed] into one independently addressable communication packet subject to a short incrementally fixed maximum delay." col. 5:49-54. Thus, for example, "the terminal 64 may send successive packets of information to the computer 66 through one of two

routes," where "[t]he first route might be via trunk line 86 between trunk MUX 18 and trunk MUX 16" and "[t]he second route might be via trunk  lines 84 and 82 . . . ."  col. 5:61-65.

34.     In addition, the '425 patent discloses that the network communication devices are identified by numerical addresses.  For example, referring to Figure 4 of the '425 patent, "[t]he VDPS 18 communicates with the external environment through a protection interface card (PIC) 92" that "provides ports for trunk lines routing incoming signals through a first trunk transceiver 94, operative as a receiver, and routing outgoing signals to a second trunk transceiver 96, operative as a transmitter."  col. 6:19-25.  "Each of the cards is connected to the MUXBUS 90 and is identifiable for intercommunication purposes by a numerical address assignment."  col. 6:43-45.  "The [Packet Control Card (PCC)] 100 controls the assignment of addresses to each card and the allocation of addresses to time slots defined on the MUXBUS 90."  col. 6:45-48.



Fig. 4 of U.S. Patent No. 4,771,425

35.     Finally, the '425 patent discloses the ability to convert data from one format to another, as well as the ability to selectively route the converted information.  Specifically, the '425 patent discloses the conversion of voice information to compressed voice information and the selective routing of the compressed voice information.  For example, referring to Figure 7, the '425 patent discloses a "voice/data processor (VDP) 103 [that] is also coupled to the MUXBUS 90," where VDP 103 "is operative to compress and decompress voice information in packets for distribution between trunk lines."  col. 6:48-51.  "The VDP 103 consists of two data paths, the first data path comprising a voice packetizer 156 coupled to receive signals from the circuit MUXBUS interface 150 and to supply packetized signals as output to the packet MUXBUS interface 152."  col. 12:1-5.  More specifically, "the voice/data packetizer 156 receives PCM voice data from the circuit MUXBUS interface 150 at a data port.  If the PCM

24

data is a voice sample, the sample is compressed according to the ADPCM Conversion standard.

If the PCM sample is not a voice sample, it does not go through this conversion process."

col. 12:32-36.



Fig. 7 of U.S. Patent No. 4,771,425

36.     Upon information and belief, Mr. Thompson and Mr. Miele, individually and

jointly, were aware of the '425 patent, and were aware of their individual responsibilities to

disclose the '425 patent to the USPTO.  However, upon information and belief, Mr. Thompson

and Mr. Miele, individually and jointly, made deliberate and knowing decisions to withhold the

'425 patent from the USPTO, and this decision was made with the specific intent to deceive the

USPTO.  Moreover, upon information and belief, the '425 patent was material to patentability of

the claims in the '722 patent, such that the USPTO would not have issued the '722 patent with

the present claims.  Therefore, the '722 patent is unenforceable by reason of the patentee's

inequitable conduct during prosecution of the '722 patent before the U.S. Patent and Trademark Office ("USPTO").

## COUNTERCLAIMS

Verizon Services Corp. ("Verizon") asserts the following counterclaims against Bear Creek Technologies, Inc. ("BCT").

## THE PARTIES

1.      Verizon is a Delaware corporation with its principal place of business in Ashburn, Virginia.

2.      BCT has alleged in the Complaint that it is a corporation organized and existing under the laws of Delaware with its principal place of business in Orange Beach, Alabama.

## JURISDICTION AND VENUE

3.      Verizon's counterclaims for declaratory judgment arise under the Federal Declaratory Judgment Act and the patent laws of the United States, 28 U.S.C. §§ 2201 and 2202, and 35 U.S.C. § 100 *et seq.*  This Court has subject matter jurisdiction over Verizon's counterclaims under 28 U.S.C. §§ 1331, 1367, and 1338(a).

4.      On August 17, 2011, BCT commenced a civil action for infringement of the Asserted Patent by filing a Complaint in this Court against Verizon, alleging infringement of U.S. Patent No. 7,899,722 ("the '722 patent").  Verizon denies infringement, including by its affiliates, of the '722 patent as alleged in the Complaint and asserts the invalidity and unenforceability of the patent, as set forth above in Verizon's Answer thereto.  As a

consequence, there is an actual justiciable controversy between Verizon and BCT concerning whether Verizon infringes any valid and enforceable claim of the '722 patent.

5.      This Court has personal jurisdiction over BCT because BCT has submitted itself to the jurisdiction of this Court.

6.      Venue in this Court is proper because the matters alleged arise from BCT's Complaint.

## FIRST COUNTERCLAIM
### (Invalidity)

7.      The allegations of Paragraphs 1-6 of the Counterclaims are incorporated by reference as if fully set forth herein.

8.      The claims of the '722 patent are invalid because they fail to meet the patentability requirements of Title 35 of the United States Code, including but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112.

9.      Accordingly, Verizon is entitled to a declaratory judgment that the claims of the '722 patent are invalid.

## SECOND COUNTERCLAIM
### (Non-infringement)

10.     The allegations of Paragraphs 1-9 of the Counterclaims are incorporated by reference as if fully set forth herein.

11.     Verizon and its affiliates have not infringed and are not infringing, either directly or indirectly, any claim of the '722 patent.

12.     Accordingly, Verizon is entitled to a declaratory judgment that it has not infringed and does not infringe the '722 patent.

## THIRD COUNTERCLAIM
### (Inequitable Conduct)

13.     The allegations of Paragraphs 1-12 of the Counterclaims are incorporated by reference as if fully set forth herein.

14.     Verizon repleads and realleges the statements of Paragraphs 10-36 of the Affirmative Defenses in the Answer above.  The aforementioned conduct amounted to the knowing concealment of material prior art from the examiner with an intent to deceive the examiner.  But for this inequitable conduct, the patent examiner would have used the '425 patent as prior art to reject the applicant's proposed claim amendments and continued to reject the pending claims, and the USPTO would have never issued the '722 patent.

15.     Thus, the '722 patent is unenforceable by reason of the patentee's inequitable conduct during prosecutions prosecution of the '722 patent before the USPTO.

## PRAYER FOR RELIEF

Verizon respectfully requests that the Court grant the following relief:

    A.  A dismissal of the Complaint against Verizon with prejudice;

    B.  A declaration that BCT recover nothing from Verizon;

    C.  A declaration that the claims of the '722 patent are invalid;

    D.  A declaration that Verizon and its affiliates have not infringed, either directly or indirectly, and are not infringing, either directly or indirectly, any valid and enforceable claim of the '722 patent;

28

E.  A declaration that the '722 patent is unenforceable;

F.  An order enjoining BCT, its officers, agents, servants, employees, attorneys, and

representatives, and any successors and assigns thereof, from charging or

asserting infringement of any claim of the '722 patent against Verizon, its

affiliates, or anyone in privity with Verizon;

G.  A declaration that this is an exceptional case under 35 U.S.C. § 285 and an award

to Verizon of its costs and reasonable attorneys' fees incurred in this action; and

H.   A judgment awarding Verizon such other and further relief as this Court may

deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Verizon respectfully demands a trial by

jury on all issues so triable.


Date: September 20, 2011                         Respectfully submitted,


                                                 /s/ C. Brandon Rash
                                                 Gerald F. Ivey (*pro hac vice* pending)
                                                 gerald.ivey@finnegan.com
                                                 John M. Williamson (*pro hac vice* pending)
                                                 john.williamson@finnegan.com
                                                 C. Brandon Rash (VA Bar # 72248)
                                                 brandon.rash@finnegan.com
                                                 FINNEGAN, HENDERSON, FARABOW,
                                                    GARRETT & DUNNER, LLP
                                                 901 New York Avenue, NW
                                                 Washington, DC 20001-4413
                                                 Phone: (202) 408-4475
                                                 Fax: (202) 408-4400

                                                 Elliot C. Cook (*pro hac vice* pending)
                                                 elliot.cook@finnegan.com
                                                 FINNEGAN, HENDERSON, FARABOW,

GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Dr.
Reston, VA 20190
Phone: (202) 571-2700
Fax: (202) 408-4400

Leonard Charles Suchyta (*pro hac vice* pending)
leonard.suchyta@verizon.com
Caren K. Khoo (*pro hac vice* pending)
caren.khoo@verizon.com
Verizon Corporate Resources Group LLC
One Verizon Way
Basking Ridge, NJ 07920
Phone: (908) 559-5623
Fax: (908) 766-6974
Counsel for Defendant
Verizon Services Corp.

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of September, 2011, I will electronically file the

foregoing **Answer to Complaint, Affirmative Defenses, Counterclaims of Verizon Services**

**Corp.** with the Clerk of Court using the CM/ECF system, which will then send notification of

such filing (NEF) to the following:

Anthony L. Miele (VSB #36055)
tony@mielelawgroup.com
MIELE LAW GROUP P.C.
21 Custom House Street, 7th Floor
Boston, MA 02110
Telephone: (617) 818-2692
Fax: (508) 319-3001

David N. Ventker (VSB #29983)
dventker@ventkerlaw.com
Marissa M. Henderson (VSB #44156)
mhenderson@ventkerlaw.com
VENTKER & WARMAN, PLLC
101 West Main St., Suite 810
Norfolk, VA 23510
Telephone: (757) 625-1192
Fax: (757) 625-1475

Counsel for Plaintiff
Bear Creek Technologies, Inc.

/s/ C. Brandon Rash
C. Brandon Rash (VSB # 72248)
brandon.rash@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
Phone: (202) 408-4475
Fax: (202) 408-4400

Counsel for Defendant
Verizon Services Corp.